**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phillip A. Castro, | No. CV-10-616-TUC-DTF |
| Petitioner, | **ORDER** |
| vs. | |
| Warden Conrad M. Graber, | |
| Respondent. | |

Pending before the Court is a Petition for Writ of Habeas Corpus brought pursuant to Title 28, United States Code, Section 2241.[1] Petitioner, Phillip A. Castro, who is confined in the Federal Correctional Institution in Safford, AZ, alleges that the Bureau of Prisons (BOP) violated his right to due process and the Administrative Procedures Act in denying his request for designation to a Residential Re-Entry Center (RRC). Before the Court are the Petition (Doc. 1), Respondent's Answer (Doc. 7), and the Reply (Doc. 11).

## Background

Petitioner was sentenced on December 10, 2008, to 70 months imprisonment, followed by 5 years of supervised release, for distribution of methamphetamine in violation of 21 U.S.C. § 841. (Doc. 7-1 at 8.) He is projected to be released via good time conduct on January 7, 2014,

---

[1] 28 U.S.C. § 2241 is the federal habeas corpus statute that permits a prisoner to challenge his imprisonment on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. *See generally Peyton v. Rowe*, 391 U.S. 54 (1968).

and is eligible for home detention on July 7, 2013. (*Id.*)

On January 19, 2010, Castro requested transfer to an RRC, which was denied.[2] (Doc. 1-1 at 10-12.) Castro's first appeal was denied (Doc. 1-1 at 7-9), as was his subsequent appeal (*id.* at 4-6). Castro filed a third appeal to the Central Office, which was pending at the time he filed the instant petition. (*Id.* at 2; Doc. 7 at 3.)

## **Analysis**

Castro raises two claims, both of which arise from his January 2010 request for immediate transfer to an RRC.

The Second Chance Act (SCA), which was signed into law on April 9, 2008, *see* 18 U.S.C. §§ 3621 and 3624, sets forth standards by which the BOP is required to make decisions concerning prisoner placement in RRCs. SCA directs the BOP to ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. *See* 18 U.S.C. § 3624(c)(1). The statute specifies that such conditions may include an RRC. *Id.* The BOP is to utilize the five factors sets forth in 18 U.S.C. § 3621(b) to make such determinations. That statute provides, in relevant part:

> Place of imprisonment. – The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering–
>
>     (1) the resources of the facility contemplated;
>
>     (2) the nature and circumstances of the offense;
>
>     (3) the history and characteristics of the prisoner;
>
>     (4) any statement by the court that imposed the sentence–

---

[2] The copy of this initial response that Castro filed was altered prior to submission, in that numerous lines are blacked out, primarily from the section about his history. Respondent did not submit a clean copy of the document.

     (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

     (B) recommending a type of penal or correctional facility as appropriate; and

   (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). The language of § 3624(c) does not restrict BOP from placing an inmate in an RRC prior to the final year of his sentence, based on the criteria set forth in § 3621. *See Rodriguez v. Smith*, 541 F.3d 1180, 1184-85 (9th Cir. 2008).

**Claim 1**

Castro argues that BOP's initial rejection and subsequent appellate denials of his request for transfer to an RRC violated his right to due process because BOP failed to follow its own rules and policies. He contends the denial was contrary to *Rodriguez*, BOP's November 14, 2008 Operation Memorandum, and unspecified BOP Program Statements.

In *Rodriguez*, the Ninth Circuit held that BOP cannot categorically exclude prisoners from consideration for placement in an RRC based on the length of their remaining sentence. 541 F.3d at 1187. In response to this decision, the Department of Justice issued a memorandum to BOP on November 14, 2008, addressing inmate requests for RRC transfers more than twelve months from the end of their sentences.[3] (Doc. 1-1 at 13.) That memorandum informs BOP staff that RRC placement is an option any time during an inmate's prison sentence and, in assessing such a request, staff should consider the five factors from § 3621(b). (*Id.*)

In response to Castro's initial request for placement in an RRC, his unit team reviewed his circumstances and assessed them pursuant to the five factors of § 3621(b). (Doc. 1-1 at 11-12.) Upon appeal, his circumstances were again reviewed and it was determined that the § 3621(b) factors were appropriately considered. (*Id.* at 6, 9.) The Court's review of the process employed by BOP indicates that Castro's request was not automatically denied or denied based

---

   [3] Castro also cited and submitted an April 14, 2008 memo, addressing RRC placements for inmates within twelve months of release, pursuant to § 3624. (Doc. 1-1 at 13-16.) Because Castro is not in "pre-release status" this memo is irrelevant to his claim.

- 3 -

1 on the remaining length of his sentence. Additionally, his request was assessed pursuant to the
2 relevant statutory factors. Castro has not identified a violation of any particular program
3 statement, therefore, the Court cannot assess that portion of Castro's argument.

4 Castro appears to interpret the governing law and policies as guaranteeing all inmates
5 twelve-months of time in an RRC; however, neither *Rodriguez* nor any BOP policy stands for
6 that proposition. The SCA does not mandate an RCC placement of 12 months or prohibit a
7 placement of less than 12 months. *See* 18 U.S.C. § 3624(c); *Roman v. Berkebile*, 2008 WL
8 4559825 at *2 n.2 (N.D. Tex. Oct. 6, 2008) (prisoners may receive a maximum of 12 months
9 under the Second Chance Act, but there is no presumptive minimum). Although Castro may
10 believe that a longer RRC placement would benefit him, a petitioner "is not entitled to a writ
11 of habeas corpus simply because he thinks the BOP misjudged his situation and made a bad
12 decision about when he should be transferred to an RRC." *Segovia-Reyna v. Cruz*, 2009 WL
13 279482 (D. Minn. 2009). The SCA only requires that the BOP consider an inmate for RRC
14 placement; it does not mandate that the inmate actually get such placement. *Wedelstedt v. Wiley*,
15 477 F.3d 1160, 1168 (10th Cir. 2007). In sum, an inmate is entitled to a good faith and proper
16 exercise of discretion by the BOP. *Rodriguez v. Smith*, 2007 WL 628663, *3 (E.D.Cal. Feb. 28,
17 2007), *aff'd* 541 F.3d 1180, 1187 (9th Cir. 2008). Castro received such a review. Additionally,
18 Castro has more than two years remaining on his sentence; therefore, placement pursuant to
19 § 3624(c) is not yet of significance.

20 Castro also contends he was entitled to a hearing on his RRC request. The November
21 memo states that inmate transfer requests are not required to be immediately addressed but can
22 be assessed at the next scheduled Program Review. (Doc. 1-1 at 13.) Nowhere does it state the
23 inmate must be present, rather, it states that after staff make a determination they should inform
24 the inmate of the decision. (*Id.*) Whether an inmate is present for official Program Reviews is
25 irrelevant because his request was not handled as part of a Program Review.

26 In his Reply, Castro argues that BOP's analysis of the § 3621(b) factors was "made up"
27 and does not apply to him. (Doc. 11 at 6.) Factor one is "the resources of the facility
28 contemplated." Castro complains the response he got was based on the resources of the facility

1  in which he was currently housed, rather than the resources of an RRC. Castro blacked out part
2  of the staff response on this factor. However, the visible portion states: "He has participated in
3  several classes since his arrival. Any RRC cannot offer what is offered at this facility." (Doc.
4  1-1 at 11.) This response assesses the resources of an RRC, it merely does so in reference to his
5  current placement. Factor three, is the "history and characteristics of the prisoner." Castro's only
6  argument on this point is that the response included his juvenile or high school record; however,
7  he does not contend it is erroneous. Castro makes no arguments relevant to factors two, four or
8  five. Overall, BOP's response was particularized to Castro's circumstances.

9  Finally, in his Reply, Castro contends he never requested an immediate transfer, he only
10 sought an evaluation pursuant to the November 2008 memorandum. These arguments are
11 contrary to his original inmate request, which states "I am requesting an RRC transfer," and his
12 appeal, which seeks relief from his "request for immediate transfer/designation to" an RRC.
13 (Doc. 1-1 at 7, 10.) Further, the purpose of the November memo is to provide guidance on
14 inmate requests for RRC transfers made more than 12 months from an inmate's projected
15 release date. Castro was provided the review required under that memo.

**Claim 2**

17 Castro argues that BOP's administrative remedy process is arbitrary, capricious and an
18 abuse of discretion in violation of the Administrative Procedures Act (APA) and due process.
19 Claim 2 is based upon 5 U.S.C. § 706,[4] which authorizes a court to find an agency action
20 unlawful if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance
21 with the law." Review under the arbitrary and capricious standard is narrow, allowing for
22 reversal only if:

> the agency relied on factors Congress did not intend it to consider, entirely failed
> to consider an important aspect of the problem, or offered an explanation that

---

[4] Castro also cites 5 U.S.C. § 553, which has to do with administrative rule making. Because Castro's argument is not based on BOP's rule making but wholly on its application of the rules, the Court does not assess § 553. Respondent addressed only § 553 and rule making. It appears to be a boilerplate response to arguments not included in Castro's petition. In his reply brief, Castro did not address Claim 2.

- 5 -

> runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Earth Island Institute v. Carlton*, 626 F.3d 462, 468-69 (9th Cir. 2010) (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)).

As an initial matter, Castro contends BOP failed to comply with Program Statement 7310.04. That statement is focused particularly on pre-release RCC placement but Castro was not in pre-release status, because he had several years left on his sentence at the time he requested a transfer. Further, the provision of the Program Statement that he cites, section 10.i(2), relates to complete exclusion from RCC placement based on public safety. Castro was not excluded from placement in an RRC, rather, BOP denied his request for an immediate transfer based on his program and security needs and told him he would be considered in the future. (Doc. 1-1 at 11-12.)

Castro argues that the BOP administrative review process is a formality, that BOP failed to address the merits of his arguments, that BOP based its decisions on erroneous facts and its decision was in conflict with the governing rules and policies. None of these arguments are well-founded.

At each stage of the process, BOP provided Castro a substantive response to his request. In his initial request, Castro asked for transfer to an RRC, pursuant to the November 2008 memo. (Doc. 1-1 at 10.) Per the instructions in that memo, BOP did not automatically deny the request, rather, staff reviewed the request pursuant to the five factors of § 3621(b) and informed the inmate of the decision that his current placement was appropriate. (Doc. 1-1 at 11-12, 13.) In his appeal, requesting relief from the denial of his request for an RRC transfer, Castro contends the denial violated *Rodriguez*, was based on arrests not convictions, and he was labeled with an erroneous Management Variable (MGTV) relative to his security level. (*Id.* at 8.) In response, the Warden listed six convictions evidencing a history of violence and stated that none of these had been vacated or expunged. (*Id.* at 9.) Further, the Warden reviewed the five criteria set forth in § 3621(b) and found the denial appropriate. (*Id.*) In his regional appeal, Castro requested that the denial be overturned because that decision did not follow the

- 6 -

governing policies and law. (*Id.* at 4.) Castro argued that the denials were outside the scope of § 3621(b) and the governing policy and law, inconsistent with his circumstances, based on an erroneous MGTV, and he has no record of convictions for violent offenses. (*Id.* at 4-5.) In response, the regional director reviewed the § 3621(b) factors and found that the prior decisions were in compliance with the governing law. (*Id.* at 6.) Further, he noted that Castro had numerous juvenile convictions for violent offenses and that BOP had not denied his request for transfer because of his MGTV classification. (*Id.*)

In his final appeal, submitted on June 23, 2010, Castro argued that he was not contending BOP failed to consider the § 3621(b) factors but that the decision was inconsistent with the statute, the November memo and other governing law. (*Id.* at 2-3.) Further, he contended that the responses were not based on accurate facts nor program statements, operations memoranda, regulations or statutes. (*Id.* at 3.) Pursuant to 28 C.F.R. § 542.18, a response was due from general counsel within forty days; Castro averred that he had not received a response by the end of September 2010, when he filed the instant action. The absence of a response is to be treated as a denial. *Id.*

Despite the failure of BOP to respond at the fourth stage of the appeal process, review of Castro's filings and the responses reveals substantive answers at the three earlier levels. Each response addressed the relevant factors and his specific arguments. The process was not a mere formality. Further, as discussed with respect to Claim 1, BOP did not violate any governing rules or policies in responding to Castro's request for transfer to an RRC. In light of the above review, Castro has failed to establish a violation of the APA – BOP did not fail to consider a relevant factor nor make an implausible decision or one contrary to the evidence. Overall, Claim 2 appears to be a repackaging of Claim 1, and it fails for the same reasons.

Accordingly,

**IT IS ORDERED** that Petitioner's Petition for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court should enter judgment and close this case.

DATED this 28th day of June, 2011.

D. Thomas Ferraro
United States Magistrate Judge